IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTINA RAHM COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:20-cv-00850 |
| | ) | |
| RAIN INTERNATIONAL, LLC, | ) | JUDGE CAMPBELL |
| TRAVIS PARRY, and BYRON BELKA, | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Pending before the Court are motions to dismiss or, in the alternative, stay or transfer filed by Defendants Rain International, LLC ("Rain") (Doc. No. 48), and Travis Parry and Byron Belka (Doc. No. 50). Plaintiff filed a consolidated Response to the motions. (Doc. No. 53). Defendants each filed a Reply. (Doc. No. 54, 55). Defendants also made two supplemental filings. (Doc. No. 56, 57).

### I.    BACKGROUND

Defendant Rain International, LLC ("Rain") markets, promotes, and sells dietary supplement and personal care products. Rain is headquartered in Utah. (Am. Compl., Doc. No. 40, ¶ 2). Defendant Byron Belka is Rain's chief executive officer. Belka resides in Utah. (*Id.*, ¶ 4). Defendant Travis Parry's relationship to Rain is somewhat unclear. Plaintiff alleges Parry "controls Rain," but is not an officer, director, or employee of the company. (*Id.*, ¶ 5). Parry also resides in Utah. (*Id.*, ¶ 3).

Plaintiff Christina Rahm Cook is a resident of Brentwood, Tennessee. In December 2019, she entered into an agreement with Rain to provide services as an independent contractor (the

"2019 Agreement"). (*Id.*, ¶ 51; Doc. No. 40-18). Cook claims Rain breached the 2019 Agreement by failing to pay her for services provided, and asserts that she relied upon Rain's promises in the 2019 Agreement and that Belka and Parry conspired with Rain to prevent Rain from paying her. (Doc. No. 40, ¶¶ 77-81 (alleging claim for breach of contract); ¶¶ 82-86 (alleging claim for detrimental reliance)). Cook also brings claims for defamation and false light invasion of privacy against Rain, Parry, and Belka based on statements made in a press release regarding the termination of the relationship between Cook and Rain. (*Id.*, ¶¶ 16, 65-76). Finally, Plaintiff brings a claim for multiple counts of copyright infringement. (*Id.*, ¶¶ 26-43, 60-64).

Although the Amended Complaint references only the 2019 Agreement, by the time they entered into that agreement the parties had been working together for some time. Cook and Rain were parties to two prior service agreements dated February 22, 2017, and November 29, 2017. (Doc. No. 25, ¶¶ 21, 22; Doc. Nos. 25-1, 25-2). Exhibit 1 to the 2019 Agreement references payments to Cook for sales in 2018 and credits due Rain for payments by Travis Parry/Teton Labs for 2019. (*See* Doc. No. 40-18 at PageID# 553).

Months before Plaintiff initiated this action on September 30, 2020, (*see* Doc. No. 1), on June 23, 2020, Rain filed suit against Cook and others in Utah state court.[1] (*See* Utah Complaint, Doc. No. 49-1). On July 29, 2020, the case was removed to the U.S. District Court for the District of Utah. *See Rain International v. Cook, et al.*, Case No. 2:20-cv537 (D. Utah Jul. 29, 2020). On March 18, 2021, the Utah court denied a motion to dismiss filed by Cook and two of her co-defendants, Predicted Health Ventures and International Seed Nutrition Supply, finding that the defendants were subject to personal jurisdiction in Utah and rejecting the defendants' efforts to

---

[1] The other defendants in the Utah action were: Clayton Thomas, Susan Corbo, and corporate defendants Personalized Healthcare Solution, LLC, Simply Wholeistic Inc., Predicted Health Ventures, LLC, and International Seed Nutrition Society, LLC.

2

dismiss for lack of standing and forum non conveniens. *Rain International v. Cook, et al.*, Case No. 2:20-cv537, 2021 WL 1063310 (D. Utah, Mar. 18, 2021). The memorandum opinion summarizes the allegations in that case:

> Rain sells dietary supplements and personal care products "under [a] direct sales model through a network of individual distributors." Rain hires individuals it views as qualified to assist in the development of its products. It alleges that its reputation depends in part on the qualifications of these individuals because their customers consider such qualifications when evaluating Rain's products.
>
> Sometime before September 2016, Cook met with Ryan Fry ("Fry"), at the time a vice president of Rain, and agreed to act as a consultant regarding a skin-care product Rain was developing. Rain and Cook entered into a contract specifying as much in September 2016. In the negotiations leading up to the contract, Cook represented that she held a PhD in a scientific field and that "she had extensive scientific knowledge and work experience." Cook also presented Rain with documents, including a resume, that outlined her achievements and credentials. Rain alleges that it relied on this information in deciding to contract with Cook and did not learn until years later that these representations were false. Rain and Cook entered into additional agreements in February 2017, November 2017, and December 2019. Rain alleges that Cook does not have a PhD, that she does not have extensive scientific knowledge, and that she otherwise misrepresented her credentials. Rain alleges that Cook's misrepresentations have harmed its reputation and goodwill among its customers.
>
> Rain further alleges that rather than performing her duties under the contracts, Cook used Rain's resources to "gain Rain's highly confidential and competitive product information" to develop "products competitive with Rain." Rain alleges that Cook established International Seed and Predicted Health to aid the development and marketing of the competing products. All of this was done in violation of the non-compete and non-solicitation clauses contained in the February 2017, November 2017, and December 2019 agreements. As a result of Cook's alleged misconduct, Rain brings this action and asserts five causes of action, four against Cook and one against all Defendants: (1) breach of contract and the covenant of good faith and fair dealing; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) conspiracy (against all Defendants) and (5) unjust enrichment (in the alternative).

*Id.* at * 1-2 (footnotes and internal citations omitted).

After the Utah court denied the motion to dismiss, Cook filed a counterclaim and third-party complaint in the Utah action. *Rain Int'l v. Cook*, Case No. 2:20-cv-00537, Doc. No. 28 (D. Utah, Apr. 9, 2021) (a copy is filed at Doc. No. 57-1 in this case). The counterclaim / third-party complaint alleges seven claims against Rain and/or Travis Parry. Five of the claims are based on alleged breaches of or misrepresentations related to the 2019 Agreement at issue in this case. (*Id.*).

## II.  ANALYSIS

Defendants seek to dismiss this action for lack of personal jurisdiction, improper venue, and the first-to-file rule. In the alternative, Rain argues the Court should stay this case pending resolution of the Utah action or transfer this case to the U.S. District Court for the District of Utah under 28 U.S.C. § 1404(a).

The Court will initially consider the issue of transfer rather than dismissal based on lack of personal jurisdiction or improper venue because transfer "serves the ultimate goal of allowing cases to be decided on their substantive merits, as opposed to being decided on procedural grounds." *Flynn v. Greg Anthony Constr. Co., Inc.,* 95 Fed. Appx. 726, 741 (6th Cir. 2003); *see also Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466-67 (1962) (transferor court need not have personal jurisdiction over the defendants). In this case, transfer may be appropriate under 28 U.S.C. § 1404(a), the first-to-file rule, or both.

### A. Transfer of Venue under 28 U.S.C. § 1404(a)

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As the Sixth Circuit has explained, district courts have broad discretion under the statute to determine when

4

party convenience or the interest of justice make transfer appropriate. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

In deciding whether transfer is appropriate, a court must evaluate factors relating to the convenience of the parties and the public interest. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 62 (2013). Factors relating to the convenience of the parties include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises, if relevant; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. at 62, n.6. Factors relating to the public interest include the local interest in having localized disputes decided at home; the administrative difficulties resulting from court congestion; and the interest in having a trial of a diversity case in a forum at home with the law that will be applied. *Id; see also Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016). Courts are also to give some weight to the plaintiff's choice of forum. *Atl. Marine Const. Co.*, 571 U.S. at 61, n.6. The burden of demonstrating transfer is warranted is on the moving party. *Means,* 836 F.3d at 652, n.7.

**B. The First-to-File Rule**

Under the first-to-file rule, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) (citations and internal quotation marks omitted). The rule "encourages comity among federal courts of equal rank" and "conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Id*.

(citing *Zide Sport Shop of Ohio v. Ed Tobergate Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) and *EEOC v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988)).

"[C]ourts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues and claims at stake." *Id*. The first-to-file rule applies when the parties and claims in the two actions "substantially overlap" even if they are not perfectly identical. *Id*. at 790-91. The claims should "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id*. at 791 (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)). "If these factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of inequitable conduct, bad faith, anticipatory suits, [or] forum shopping, merit not applying the first-to-file rule in a particular case." *Id*. (citation and internal quotation marks omitted).

## C.  Transfer is Appropriate

As a threshold issue under 28 U.S.C. § 1404(a), the Court considers whether the proposed venue is a district where this action "might have been brought."  Here, none of the parties disputes venue is proper in Utah as all of the defendants reside in Utah. *See* 28 U.S.C. § 1391(b)(1).

The convenience of the parties weighs heavily in favor of transfer to Utah. The parties are already engaged in litigation in that forum arising out of the business relationship between the parties. Although Byron Belka is not a named party in the Utah case, as Rain's CEO he is almost certainly involved in the litigation. The Utah court has held that Cook is subject to personal jurisdiction in Utah. Both cases assert breach of contract claims arising out of the same contract. While the claims asserted in each case differ, the underlying facts overlap significantly and the witnesses and relevant evidence in both cases will likely substantially overlap. The Court notes that the copyright violations alleged in this case appear to arise out of content created during Cook

and Rain's business relationship. (*See e.g.*, Doc. No. 40-2 (Jul. 17, 2017); Doc. No. 40-3 (Oct. 12, 2019); Doc. No. 40-4 (Oct. 12, 2019); Doc. No. 40-5 (Oct. 12, 2019); Doc. No. 40-6 (Oct. 28, 2019); Doc. No. 40-7 (Nov. 1, 2017); Doc. No. 40-9 (Oct. 25, 2017)).

The interest of the public and the interests of justice also weigh in favor of transfer. The public interest favors a trial in a diversity case in a forum at home with the law to be applied. *Means*, 836 F.3d at 651. The parties have chosen Utah law as the law governing the contracts that delineate the parties' business relationship. (*See* 2019 Agreement, Doc. No. 40-18 ("This Agreement shall be governed by, and construed under, the laws of the State of Utah."); February 2017 Agreement, Doc. No. 25-1 (same); November 2017 Agreement (same)).

The pendency of an earlier filed action and the prudential considerations of the first-to-file rule tilt the scale heavily in favor of transfer. Given the overlapping claims, there is a real risk of duplicative or contradictory judgments. Moreover, adjudication of the claims in a single forum furthers judicial economy. Although Plaintiff's choice of forum is entitled to some weight, it is considerably outweighed by the strength of the factors in favor of transfer.

In light of the foregoing, it is abundantly clear that convenience of the parties, the public interest, and the interest of justice weigh heavily in favor of transferring this action to the District of Utah.

### III.    CONCLUSION

For the reasons stated, Defendants' motions (Doc. Nos. 48 and 50) will be GRANTED in part and this case will be transferred to the United States District Court for the District of Utah.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE